## Gemmill's Estate

*W. W. Van Baman,* for exceptants.
*Martin B. Ebbert,* contra.

ANDERSON, J., May 24, 1943.—The question involved in this issue comes before the court on exceptions filed to the report of the auditor appointed by the court to distribute the balance on the first and partial account filed by The Guardian Trust Company, guardian of Edie Gemmill, a weakminded person. The exception taken to the auditor's report is to the allowance to the Commonwealth of its claim in full for support and maintenance of the ward, Edie Gemmill, while at the Harrisburg State Hospital from December 7, 1921, to March 31, 1942, in the total amount of $4,747.

There is no denial of the fact that Edie Gemmill was admitted to the State Hospital December 7, 1921, and has been there as a patient continuously since that date, nor was there any evidence offered or statement made to show that anyone has paid anything to the State or the institution to reimburse it for the expense incurred in supporting and maintaining the ward at the institution.

The objections raised to the allowance of the claim are the technical ones that the evidence submitted is insufficient to sustain the claim of the Commonwealth, that the finding of the auditor is contrary to the evidence, and that the auditor erred in awarding the whole claim to the Commonwealth of Pennsylvania.

The Commonwealth presented at the audit a statement of the Department of Revenue, under its seal, of the amount expended by the Commonwealth for the support and maintenance of the ward as prescribed by section 5 of the Act of June 1, 1915, P. L. 661, as amended by the Act of April 25, 1929, P. L. 704, sec. 3, which provides:

". . . and a statement of the Department of Revenue, issued under its seal on behalf of any State-owned institution wherein persons are maintained in part at the expense of the Commonwealth, shall be received as prima facie evidence in any court of this Commonwealth, of the amount expended by the Commonwealth

for the support or maintenance of any such person, in any proceeding brought to recover the amount of such maintenance."

Counsel for the accountant argues very earnestly and ably, both orally and by a carefully prepared brief, that since the Commonwealth did not rest its case there, but elected to call as witnesses two representatives and employes of the Department of Revenue, the prima facie evidence of its claim, as presented by the statement under seal, now falls and the Commonwealth has thus elected to rely on the oral testimony, which is insufficient to support its claim. A careful perusal and study of the testimony does not seem so to indicate. What the testimony does reveal is that according to the records no payments have been made to the Commonwealth by anyone for or on behalf of Edie Gemmill since her admission, which was apparently the chief reason for calling these witnesses. The testimony also shows the qualifications of one of the two witnesses called to make the statement under seal as filed, and explains the source of the information and facts in the statement. Throughout the testimony, which is comparatively brief, it seemed evident that the Commonwealth was relying entirely on the statement and endeavoring to show in addition thereto only that nothing had been paid on account of the inmate since her admission and that the witness Templeton was properly qualified to certify the statement so filed. Counsel for the accountant relies upon the statement in Frey's Estate, 342 Pa. 351, 353, to this effect:

"When the commonwealth comes into its courts, it is subject like all other suitors to the established rules of evidence. It must meet the burden of proof, its evidence must be relevant, material, the best attainable, and must be presented in due order under the regular rules of procedure. In all such respects it stands upon the same footing as ordinary litigants."

With this language, of course, we agree, as do we also with the statement made in the same case at page 355:

"The itemized statement issued by the Department of Revenue is clearly no evidence as to the fact of nonpayment, but at most prima facie evidence of the amount expended by the Commonwealth for the support and maintenance of the decedent . . . as to which there is no dispute."

In the instant case, the Commonwealth apparently has endeavored to supply one of the missing elements in the Frey Estate, i. e., the fact of nonpayment. There is very little similarity between the two cases. In the Frey case the claim was over 32 years old and was disallowed because of the presumption of payment after 20 years, a presumption which was not rebutted in any way. In addition, the patient involved had been dead for over 32 years. In the case at bar, the 20 years' presumption of payment has not been raised and, if raised, could at most apply only to a portion of the first year's charges, yet, in view of the testimony presented that no payments were ever made on the account, plus the additional fact that the account was a running and continuous one, we feel that any presumption of payment that might favor the accountant has been overcome and rebutted. Within the 20 years, the onus of proving payment lies on the defendant; after that time it devolves on the plaintiff to show the contrary, by such facts and circumstances as will satisfy the minds of the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. And if these facts are sufficient satisfactorily to account for the delay, then the presumption of payment, not being necessary to account for it, does not arise. Slighter circumstances are sufficient to repel the presumption than are required to take the case out of the statute of limitations, the latter being a positive enactment of the legislature, the former merely an inference on which legal

belief is founded: Huffman et al. v. Simmons et al., 131. Pa. Superior Ct. 370.

Counsel also points out that the statement is not made by the superintendent, steward, etc., in whose custody the records of the institution are kept, as required by the act, but this requirement applies only to institutions not owned by the State, and where State-owned institutions are involved, as in this case, a statement of the Department of Revenue, under its seal, meets the requirement as prescribed by the act. A further question is raised as to the form of the statement itself, counsel asserting that the statement required should be similar to, and in the same particularity as, a statement of claim filed under the Practice Act of May 14, 1915, P. L. 483. With this conclusion we must also disagree, as both our lower and appellate courts have consistently held that the verified statement is, under the Act of June 1, 1915, P. L. 661, prima facie evidence of expenditures, and, when its correctness is not denied, will be accepted as conclusive proof: In re Graham, 15 Del. Co. 61. See also Harnish's Estate (No. 2), 36 Lanc. 50; Frey's Estate, supra. Apparently counsel does not question the correctness of the figures, as no questions were asked on cross-examination bearing on this phase of the case, nor was any testimony offered to contradict the accuracy or correctness of the statement. It is therefore concluded that the auditor did not err in his conclusions of law or fact and that his report should be confirmed.

And now, to wit, May 24, 1943, it is ordered, adjudged, and decreed that the exceptions filed to the report of the auditor in the within proceedings are dismissed and the auditor's report is confirmed and approved; and an exception is allowed to The Guardian Trust Company, guardian and accountant, to the action of the court in this regard.